UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION


IN RE: BEAR CREEK TECHNOLOGIES, INC.,
('722) PATENT LITIGATION                                    MDL No. 2344


TRANSFER ORDER


**Before the Panel:**[*] Pursuant to 28 U.S.C. § 1407, patentholder Bear Creek Technologies, Inc. (Bear Creek) moves for centralization in the District of Delaware or, alternatively, the Eastern District of Virginia. This litigation currently consists of fourteen actions, pending in three districts, as listed on Schedule A. At issue in each action is the infringement of a Bear Creek patent by various telecommunications companies and related questions surrounding the validity or enforceability of the patent.

Certain multi-system operator defendants[1] do not oppose centralization and suggest selection of either the District of Delaware or the Eastern District of Pennsylvania as the transferee district. Other responding defendants[2] oppose centralization. Further, at oral argument, counsel for the Vonage defendants argued that the joinder provision of the recently passed America Invents Act, 35 U.S.C. § 299, limits our authority under 28 U.S.C. § 1407 to centralize this litigation for coordinated or consolidated pretrial proceedings.

We begin our discussion of the Vonage defendants' opposition to centralization with a few words about how we exercise our authority under Section 1407. The parties submitted briefs that frequently referred to the Panel granting "consolidation," "pretrial consolidation" or "MDL consolidation." This language does not precisely capture how transfer under Section 1407 operates. Under our governing statute, Section 1407, we transfer "civil actions involving one or more common questions of fact" that "are pending in different districts" to a single district "for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). Even though Section 1407 transfer

---

[*] Judges John G. Heyburn II and Marjorie O. Rendell did not participate in the decision of this matter.

[1] Charter Communications Inc.; Comcast Cable Communications, LLC; CSC Holdings, LLC; Bright House Networks, LLC; Time Warner Cable, Inc.; Mediacom Broadband, LLC; and Mediacom Communications Corp.

[2] 8x8, Inc.; Aptela, Inc.; Cox Communications, Inc., and Cox Virginia Telecom, LLC; Lingo, Inc.; Primus Telecommunications, Inc.; RCN Telecom Services, LLC; Qwest Communications International, Inc., and Qwest Communications Company, LLC; T-Mobile USA, Inc.; and Vonage America, Inc.; Vonage Holdings Corp., and Vonage Marketing, LLC (collectively Vonage).

- 2 -

contemplates transfer "for coordinated or consolidated pretrial proceedings," we do not order pretrial "consolidation" of the cases before us. That is done, if at all, in a district court, typically the MDL transferee court. We refrain from dictating the structure of an MDL's pretrial proceedings (such as whether the litigation will proceed in a coordinated manner as opposed to consolidated proceedings). We choose instead to leave the degree of coordination or consolidation of involved actions to the sound discretion of the transferee judge. *See, e.g., In re: Enron Corp. Sec., Derivative & ERISA Litig.*, 196 F.Supp.2d 1375, 1376 (J.P.M.L. 2002); *In re: Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, 598 F.Supp.2d 1379, 1381 (J.P.M.L. 2009). In instances such as this, in which litigants seek to create a new MDL, we typically refer to our transfer of actions for coordinated or consolidated pretrial proceedings as "centralization," which we hope clarifies our role in the MDL process.

Vonage argues that the following portion of the America Invents Act limits our authority to centralize this litigation:

> **(b) Allegations insufficient for joinder.** For purposes of this subsection, accused infringers may not be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit.

35 U.S.C. § 299(b). Vonage contends that the Panel cannot centralize this litigation – in which it asserts that the only commonality among multiple defendants is the bare allegation that they infringe the same patent. But Vonage maintains that Section 1407 transfer remains proper in other patent cases where material commonalities among the defendants exist beyond allegations that all defendants infringe the same patent or actions against multiple manufacturers, distributors, or resellers of an identical product. Bear Creek responds that the plain language of the America Invents Act's joinder provision does not apply to its request for pretrial centralization because Bear Creek does not seek to have the defendants "joined in one action" or have the various actions "consolidated for trial."

We find that the America Invents Act does not alter our authority to order pretrial centralization of this litigation. First, transfer under Section 1407 and joinder under Section 299 operate under decidedly different standards. The requirement for joinder expressed in Section 299(a) requires that (1) a civil action must contain "questions of fact common to all defendants or counterclaim defendants;" and (2) the plaintiff's claims must arise "out of the same transaction, occurrence, or series of transactions or occurrences" relating to the alleged patent infringement. 35 U.S.C. § 299(a). In contrast, transfer under Section 1407 is for "pretrial proceedings" and requires civil actions pending in more than one federal district that involve "common questions of fact" for which transfer will be "for the convenience of parties and witnesses" and "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

Transfer under Section 1407 does not transmute all transferred actions into a single action, thereby joining all defendants. Instead, the separate nature of actions transferred to an MDL is preserved throughout each action's pendency whether the actions proceed in a coordinated or consolidated manner. This is done because Section 1407 "not only authorizes the Panel to transfer

- 3 -

for coordinated or consolidated pretrial proceedings, but obligates the Panel to remand any pending case to its originating court when, at the latest, those pretrial proceedings have run their course." *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998).

In contrast to Section 1407's express focus on transfer for pretrial proceedings, the second portion of Section 299(b) focuses on consolidation for trial. There is no overlap between these concepts or these statutes. Section 1407 applies to pretrial proceedings, which necessarily must conclude before an action proceeds to trial. Section 299 itself is silent as to the conduct of pretrial proceedings, nor does it mention Section 1407. Moreover, Vonage does not point to any portion of the legislative history of the America Invents Act joinder provision that discusses pretrial transfer under Section 1407.

Assuming that the Act even applies to the cases at issue, which were filed in August 2011 before the passage of the America Invents Act, we are of the opinion that if Congress intended to amend Section 1407 it would have done so in a more direct fashion than Vonage now advocates. Adopting Vonage's interpretation would mean that the American Invents Act implicitly amended a statutory scheme for the management of complex litigation – centralization under Section 1407 – that has persisted for over 40 years.[3] In the recent past, when Congress has limited the Panel's authority to transfer a certain category of actions, it has done so explicitly. For instance, pursuant to a provision of the Class Action Fairness Act, Section 1407 transfer of an action removed pursuant to the statute's "mass action" provisions is prohibited unless a majority of plaintiffs so request. *See* 28 U.S.C. § 1332(d)(11)(C)(i) ("Any action(s) removed to Federal court pursuant to this subsection shall not thereafter be transferred to any other court pursuant to section 1407, or the rules promulgated thereunder, unless a majority of the plaintiffs in the action request transfer pursuant to section 1407.").

The plain meaning of the AIA's joinder provision simply does not implicate Section 1407 transfer, and the Act's terms do not contain sufficient ambiguity to imply such a meaning. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.") (citations and internal quotations omitted). We consequently decline to accept Vonage's interpretation of the joinder provision of the America Invents Act, 35 U.S.C. § 299, and hold that, by its terms, this statute does not affect our authority to transfer this litigation for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

---

[3] In passing Section 1407, Congress anticipated that multidistrict litigation would encompass patent litigation. *See* H.R. Rep. No. 1130, 90th Cong., 2nd Sess. (1968), reprinted in 1968 U.S.C.C.A.N. 1898, 1900 ("The types of cases in which massive filings of multidistrict litigation are reasonably certain to occur include not only civil antitrust actions but also, common disaster (air crash) actions, patent and trademark suits, products liability actions and securities law violation actions, among others.").

- 4 -

Vonage also predicts that centralization of this litigation will lead to a flood of MDL patent filings by non-practicing entities seeking to execute an "end run" around the AIA's new joinder requirements. We do not accept this assertion as being a sufficient reason to deny centralization in this litigation. Centralization of any litigation – including patent cases – is not automatic, and will necessarily depend on the facts, parties, procedural history and other circumstances in a given litigation. *See, e.g., In re CVS Caremark Corp. Wage and Hour Employment Pracs. Litig.*, 684 F.Supp. 2d 1377, 1379 (J.P.M.L. 2010) ("[W]e do not 'rubber stamp' in any docket...").

Defendants oppose centralization on other grounds, principally arguing that the factual variance among the actions such as the differing allegedly infringing systems employed by each competing defendant, and the inefficiencies created by combining all defendants from the cable, internet, telephone, and VoIP industries, weigh against centralization. While centralization of this litigation is somewhat of a close call, we conclude that the benefits of transfer under Section 1407 outweigh these considerations. The Panel has often centralized litigation involving different products which allegedly infringe a common patent or patents. *See, e.g., In re Rembrandt Technologies, LP, Patent Litigation*, 493 F.Supp. 2d 1367 (centralizing fifteen actions involving one or more of nine patents relating to the provision of high speed internet and digital broadcasting using cable modems) and *In re: Method of Processing Ethanol Byproducts and Related Subsystems ('858) Pat. Litigation*, 730 F.Supp. 2d 1379 (centralizing eleven actions alleging infringement of common patent related to the processing of byproducts of ethanol production). Moreover, while the facts surrounding infringement in this litigation may vary from defendant to defendant,[4] the actions will share substantial background questions of fact concerning the numerous anticipated arguments regarding the validity and enforceability of the '722 patent and implicating factual issues concerning such matters as the technology underlying the patent, prior art, priority (such as the contention that the patent was abandoned in 2003) and/or claim construction. Further, centralization offers substantial savings in terms of judicial economy by having a single judge become acquainted with the complex patented technology and construing the patent in a consistent fashion (as opposed to having six judges separately decide such issues).

For all of these reasons, on the basis of the papers filed and hearing session held, we find that these fourteen actions involve common questions of fact, and that centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions involve factual questions concerning the infringement, validity and/or enforceability of U.S. Patent No. 7,889,722 ('722 patent), which is entitled "System for Interconnecting Standard Telephony Communications Equipment to Internet Protocol Networks." Centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings (particularly on claim construction issues), and conserve the resources of the parties, their counsel and the judiciary.

---

[4] At oral argument and in its briefing papers, Bear Creek challenged this proposition by noting other infringement-related factual commonalities, such as defendants' use of the allegedly infringing systems of other defendants, as well as the defendants' alleged use of common vendors for equipment.

- 5 -

We are of the view that the District of Delaware is an appropriate transferee district for pretrial proceedings in this litigation. Ten actions are already pending in this readily accessible district, where most defendants and patentholder Bear Creek are incorporated. Further, by selecting Judge Gregory M. Sleet to serve as the transferee judge in this matter, we are selecting a seasoned jurist with considerable experience with multidistrict patent litigation. We are confident that he will steer this litigation on a prudent course.

IT IS THEREFORE ORDERED that pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A and pending outside the District of Delaware are transferred to the District of Delaware and, with the consent of that court, assigned to the Honorable Gregory M. Sleet for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

_____
Kathryn H. Vratil
Acting Chairman

| W. Royal Furgeson, Jr. | Barbara S. Jones |
| Paul J. Barbadoro | Charles R. Breyer |

**IN RE: BEAR CREEK TECHNOLOGIES, INC.,**
**('722) PATENT LITIGATION**                                MDL No. 2344

## SCHEDULE A

<u>District of Delaware</u>

Comcast Cable Communications, LLC v. Bear Creek Technologies Inc.,
      C.A. No. 1:11-00721
Charter Communications, Inc. v. Bear Creek Technologies Inc., C.A. No. 1:11-00722
Bear Creek Technologies, Inc. v. Vonage Holdings Corporation, et al.,
      C.A. No. 1:11-00723
Bear Creek Technologies, Inc. v. CSC Holdings, LLC, C.A. No. 1:11-00724
Bear Creek Technologies, Inc. v. Mediacom Communications Corporation, et al.,
      C.A. No. 1:11-00725
Bear Creek Technologies, Inc. v. Qwest Communications International, Inc., et al.,
      C.A. No. 1:11-00726
Bear Creek Technologies, Inc. v. T-Mobile USA, Inc., C.A. No. 1:11-00727
Bear Creek Technologies, Inc. v. 8x8, Inc., C.A. No. 1:11-00728
Bear Creek Technologies, Inc. v. AT&T, Inc., et al., C.A. No. 1:11-00729
Bear Creek Technologies, Inc. v. Time Warner Cable, Inc., et al., C.A. No. 1:11-00730

<u>Northern District of Georgia</u>

Bear Creek Technologies, Inc. v. Cox Communications, Inc., et al., C.A. No. 1:11-03784

<u>Eastern District of Virginia</u>

Bear Creek Technologies, Inc. v. RCN Corporation, et al., C.A. No. 2:11-00103
Bear Creek Technologies, Inc. v. Aptela, Inc., C.A. No. 2:11-00460
Bear Creek Technologies, Inc. v. Primus Telecommunications, Inc., et al.,
      C.A. No. 2:11-00461